**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| KEITH MOHAMED and LUXON CORIOLAN, | Civil Action No. 06-4794 (FSH) |
| Plaintiffs, |  |
| v. | **O P I N I O N** |
| OSCAR AVILES, et al., |  |
| Defendants. |  |

**APPEARANCES:**

    Keith Mohamed, Plaintiff pro se
    #138682
    Luxon Coriolan, Plaintiff pro se
    #178493
    Hudson County Correctional Center
    35 Hackensack Avenue
    Kearny, NJ 07032

**HOCHBERG**, District Judge

    Plaintiffs Keith Mohamed and Luxon Coriolan, currently confined at the Hudson County Correctional Center, Kearny, New Jersey, seek to bring this action in forma pauperis, alleging violations of their constitutional rights.

    Based on their affidavits of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Plaintiffs' applications to proceed in forma pauperis, pursuant to 28 U.S.C. § 1915(a), and order the Clerk of the Court to file the complaint.

At this time, the Court must review the complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that Plaintiff Mohamed's failure to protect and retaliation claims will proceed.  The remaining claims will be dismissed, without prejudice.

### BACKGROUND

The following facts are taken from Plaintiffs' complaint and are assumed true for purposes of this review.

Plaintiffs are Immigration and Customs Enforcement ("ICE") detainees currently housed at the Hudson County Correctional Center ("HCCC").  They name four defendants in this action: Oscar Aviles, the warden of the facility; Michael Anderson, the ICE Field Office Director; Officer Seminario of the HCCC; and Officer McCormack of the HCCC.

Plaintiffs state that on September 21, 2006, defendant Seminario removed a fellow detainee from his unit without justifiable reason.  The next day, the officer ordered the television turned off and locked down the unit before leaving for his break.  He told the detainees it was dinner time, but when the detainees were released, there was no food.

Plaintiffs also state that defendant Seminario "wrongfully assaulted" and "roughed up" Plaintiff Coriolan.

In August and September of 2006, Plaintiffs filed grievances against Officer Seminario.  On September 27, 2006, Officer Seminario told Plaintiff Mohamed that he was being fired from his job as "tier representative" for "no reason."  The next day, Officer McCormack told him the same thing and kept "point[ing] her finger [at] me everywhere I go in the unit."

Plaintiffs state that the defendant officers have abused, harassed, threatened, and retaliated against them for filing grievances.  They state that they feel their lives are endangered.

Plaintiffs also claim that their constitutional rights are being violated because they are housed with convicted inmates.  Plaintiff Mohamed was assaulted by one of these inmates, causing him serious injuries.

Plaintiffs ask the court for injunctive relief and any other relief the court deems just.

## DISCUSSION

**A.   Standard of Review**

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court

3

must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. See Alston v. Parker, 363 F.3d 229 (3d Cir. 2004); Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

**B.   42 U.S.C. § 1983 and *Bivens***

Plaintiff's claims against defendants Aviles, Seminario, and McCormack, who are state actors, have their jurisdictional basis

4

under 42 U.S.C. § 1983.  Plaintiff's claims against defendant Anderson, a federal actor, have their jurisdictional basis under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his or her constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to establish a violation of 42 U.S.C. § 1983, a plaintiff must demonstrate that the challenged conduct was committed by (1) a person acting under color of state law and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.  See Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Likewise, under Bivens, the Supreme Court held that one is entitled to recover monetary damages for injuries suffered as a result of federal officials' violations of the Fourth Amendment. In doing so, the Supreme Court created a new tort as it applied

to federal officers, and a federal counterpart to the remedy created by 42 U.S.C. § 1983.  The Supreme Court has also implied Bivens damages remedies directly under the Eighth Amendment, see Carlson v. Green, 446 U.S. 14 (1980), and the Fifth Amendment, see Davis v. Passman, 442 U.S. 228 (1979).

In order to state a claim under Bivens, a claimant must show (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law.  See Mahoney v. Nat'l Org. For Women, 681 F. Supp. 129, 132 (D. Conn. 1987)(citing Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 155-56 (1978)).

Bivens actions are analogous to suits under 42 U.S.C. § 1983 against state officials who violate federal constitutional or statutory rights.  The two bodies of law are not "precisely parallel;" however, there is a "general trend" to incorporate § 1983 law into Bivens suits.  See Egervary v. Rooney, 80 F. Supp. 2d 491 (E.D. Pa. 2000) (citing Chin v. Bowen, 833 F.2d 21, 24 (2d Cir. 1987)).

**C.   Supervisor Liability**

Local government units and supervisors typically are not liable under § 1983 solely on a theory of *respondeat superior.* See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n. 8 (1985); Monell v. Dep't of Soc. Servs. Of City of New York, 436

U.S. 658, 690-91 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of *respondeat superior.* Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete*,* 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh*,* 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp.*,* 50 F.3d 1186, 1190-91 (3d Cir. 1995).

A § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." Monell*,* 436 U.S. at 690 n. 55. "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." Kentucky v. Graham*,* 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

With respect to Plaintiff's claims against the federal

7

officer, defendant Anderson, the Third Circuit has recently held that liability may not be based on *respondeat superior.*  See Balter v. United States, 172 Fed. Appx. 401, 403 (3d Cir. Feb. 15, 2006)(unpubl.)(citing Ruiz-Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000)(collecting cases)); Richards v. Pennsylvania, 2006 WL 1913377 at *2 (3d Cir. July 12, 2006)(unpubl.); Parker v. United States, 2006 WL 2547233 at *1 n.1 (3d Cir. Sept. 6, 2006)(unpubl.); see also Laswell v. Brown*,* 683 F.2d 261, 268 & n. 11 (8th Cir. 1982), cert. denied*,* 459 U.S. 1210 (1983) (basing its conclusion on the fact that the Supreme Court has looked to § 1983 cases in evaluating the nature of defendant officials' qualified immunity); Kite v. Kelly*,* 546 F.2d 334, 337-38 (10th Cir. 1976).

    Here, however, Plaintiff asserts the personal involvement, knowledge and acquiescence of the supervisory officials, namely, defendant Anderson and Warden Aviles, either through allegations of actual participation and personal direction, or of actual knowledge and acquiescence of a policy, plan or procedure.  See Rode*,* 845 F.2d at 1207.  Thus, the claims against these defendants are not predicated solely on the basis of supervisor liability.  Accordingly, the Court will examine the various allegations asserted by Plaintiffs to determine if they state cognizable claims to withstand summary dismissal.

**D.     Plaintiff's Harassment and Assault and Failure to Protect Claims.**

Plaintiffs are immigration detainees and not "prisoners," thus, their rights are akin to those of pre-trial detainees. See Dahlan v. Dep't of Homeland Security, 2007 WL 397417 at *2 (Feb. 6, 2007)(slip copy)(citing Edwards v. Johnson, 209 F.3d 772, 778 (5th Cir. 2000)); see also Despaigne v. Crolew, 89 F. Supp.2d 582, 584-85 (E.D. Pa. 2000).

Pretrial detainees retain liberty interests firmly grounded in the Due Process Clause of the Fourteenth Amendment. See Fuentes v. Wagner, 206 F.3d 335, 341 n.9 (3d Cir.), cert. denied, 531 U.S. 821 (2000). Analysis of whether such a detainee has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979). See Fuentes, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...
>
> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however. Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...

9

> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.  Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."  Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.  ...

441 U.S. at 535-39 (citations omitted).  The Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility.  "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial."  441 U.S. at 540.  Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives.  441 U.S. at 539 n.20.  Nor are grossly exaggerated responses to genuine security considerations.  Id. at 539 n.20, 561-62.

10

1.  <u>Harassment Claims</u>

With regard to Plaintiffs' claims regarding defendant Seminario's use of profanities and verbal harassment and abuse, generally, mere verbal harassment does not give rise to a constitutional violation.  <u>See</u> <u>Prisoners' Legal Ass'n v. Roberson</u>, 822 F. Supp. 185, 189 (D.N.J. 1993)( "[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983."); <u>McBride v. Deer</u>, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001)(taunts and threats are not an Eighth Amendment violation); <u>Oltarzewski v. Ruggiero</u>, 830 F.2d 136 (9th Cir. 1987) (vulgar language); <u>Rivera v. Goord</u>, 119 F. Supp.2d 327, 342 (S.D.N.Y. 2000)(verbal harassment does not violate inmate's constitutional rights).  Racially discriminatory statements, racial slurs and epithets, without more, also do not establish liability under § 1983.  <u>See</u> <u>Freeman v. Arpaio</u>, 125 F.3d 732, 738 (9th Cir. 1997)(verbal abuse directed at religious and ethnic background does not state a cognizable constitutional violation); <u>Black Spotted Horse v. Else</u>, 767 F.2d 516, 517 (8th Cir. 1985); <u>Shabazz v. Cole</u>, 69 F. Supp.2d 177, 200-01 (D. Mass. 1999) ("without even a suggestion of physical injury, [defendants'] verbal abuse and racial epithets, although continuing for a long period of time, fall short of conscience shocking conduct"); <u>Prisoners' Legal Association</u>, 822 F. Supp. at 187-189 & n.3 (corrections officer's use of racial slurs did not

11

amount to constitutional violation); Wright v. Santoro, 714 F. Supp. 665, 667 (S.D.N.Y.), aff'd, 891 F.2d 278 (2d Cir. 1989).

However, threatening language coupled with the threatening use of a weapon and outrageous conduct by prison personnel may indicate a constitutional deprivation. Douglas, 684 F. Supp. at 398 (the court determined that brandishing a butcher knife in close proximity to prisoner and threatening to kill him may amount to a constitutional violation); see also Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) (gun was put to prisoner's head); Burton v. Livingston, 791 F.2d 97 (8th Cir. 1986) (guard threatened to shoot prisoner).

Because Plaintiffs allege facts indicating mere verbal harassment, they does not state a constitutional violation, and these claims must be dismissed, without prejudice. Plaintiffs may address these claims in an amended complaint if they choose to do so.

2.  Assault Claims

Plaintiffs allege that plaintiff Coriolan was "roughed up" by defendant Seminario when the defendant was trying to handcuff him. The Court construes this claim as an excessive force claim under the Fourteenth Amendment.

Utilizing the Bell standard, Plaintiffs do not appear to have adequately alleged that defendant Seminario used excessive force against plaintiff Coriolan in violation of his

12

constitutional rights under the Due Process Clause of the Fourteenth Amendment. The allegations are only that defendant "roughed up" Plaintiff in attempting to handcuff him. They do not indicate an intent to "punish" Plaintiff without provocation. Moreover, Plaintiff Coriolan alleges no injury- not even a *de minimis* injury. Therefore, the Court will dismiss this claim of excessive force, without prejudice, in the event Plaintiff Coriolan is able to amend the complaint to allege facts sufficient to indicate a constitutional claim.

3. <u>Failure to Protect Claim</u>

Plaintiffs state that in the HCCC, immigration detainees are housed with convicted inmates. Plaintiff Mohamed asserts that he was assaulted by one of these inmates, causing his shoulder to be dislocated. Plaintiff was transported to the hospital for medical care and still suffers from pain due to the incident. Plaintiffs contend that housing immigration detainees with convicted inmates violates their constitutional rights. The Court construes this claim as a failure to protect claim.

Plaintiff Mohamed's failure to protect claim is analyzed under the Due Process Clause of the Fourteenth Amendment under the standard set forth in <u>Bell</u>. However, as a practical matter, courts have analyzed claims of failure to protect under the "deliberate indifference" standard set forth in Eighth Amendment jurisprudence, as the due process rights of a pretrial detainee

are at least as great as the Eighth Amendment rights of a convicted prisoner.  See, e.g., Turner v. Cupp, 238 F.3d 424, 2000 WL 1141423, at *2 (6th Cir. Aug. 4, 2000) (unpublished decision); Lopez v. LeMaster, 172 F.3d 756, 759 n. 2 (10th Cir. 1999); Doe v. Washington County, 150 F.3d 920, 922 (8th Cir. 1998); Ervin v. Mangum, 127 F.3d 1099, 1997 WL 664606, at *4 (4th Cir. Oct. 27, 1997) (unpublished decision).

Thus, to prevail on an Eighth Amendment failure to protect claim, an inmate must show that he is "incarcerated under conditions posing a substantial risk of serious harm" and that the defendant was deliberately indifferent to the risk.  See Farmer v. Brennan, 511 U.S. 825, 833, 837 (1994).  To establish deliberate indifference by an individual, a plaintiff must show that the individual was subjectively aware of the risk of harm to the plaintiff's health or safety, and disregarded it.  See Farmer, 511 U.S. at 837; Natale, 318 F.3d at 582.

Keeping in mind that *pro se* complaints should be construed liberally, this Court will allow Plaintiff Mohamed's failure to protect claim to proceed against the defendants.  Defendants will be ordered to answer the allegations of the complaint with regard to this claim.  See Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir. 2004)(stating that at the pleading stage, a plaintiff need only make out a claim upon which relief can be granted, and that

14

if more facts are necessary to resolve the dispute, the parties may avail themselves of discovery mechanisms).

**E.     Plaintiff Mohamed's Retaliation Claim.**

Plaintiff Mohamed asserts that he was retaliated against by defendants Seminario and McCormack for complaining about their behavior.

To proceed on a retaliation claim, a plaintiff must allege facts showing that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action.  See Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225).  See also Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v. Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with approval in Allah, 229 F.3d at 225.

In this case, Plaintiff Mohamed asserts that he was engaged in the protected activity of filing grievances, he suffered at the hands of defendants adverse action of being dismissed from his job as tier representative for "no reason," which action may deter an ordinary person from exercising his rights, and the dismissal from his job was a result of his filing grievances.

15

Defendants will be ordered to answer the allegations of the complaint with regard to this claim.  See Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir. 2004)(stating that at the pleading stage, a plaintiff need only make out a claim upon which relief can be granted, and that if more facts are necessary to resolve the dispute, the parties may avail themselves of discovery mechanisms).

## CONCLUSION

For the reasons set forth above, Plaintiff Mohamed's failure to protect and retaliation claims will be permitted to proceed. Plaintiffs' harassment and assault claims will be dismissed, without prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted.  An appropriate order follows.

 /s/ Faith S. Hochberg
United States District Judge

Dated:  March 26, 2007